UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MEI LORIK also known as MEI GAGNE, )
)
Plaintiff, )
)
vs. )
) No. 1:13-cv-00314-SEB-DML
ACCOUNTS RECOVERY BUREAU, INC., )
WRIGHT & LERCH, )
)
Defendants. )

**ORDER ON PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS**
**[Docket Nos. 23 and 28]**

This is a straightforward, uncomplicated Fair Debt Collection Practices Act (FDCPA) lawsuit[1], the merits of which were resolved expeditiously following the filing of the Complaint with Plaintiff's acceptance of Defendant's Rule 69 Offer of Judgment. The Offer of Judgment provided that Plaintiff would prevail against Defendants and receive "the total amount of $2,500.00 ($2,000.00 statutory damages, ($1,000.00 per each Defendant), plus $500.00 actual damages), plus costs, including but not limited to, filing fees that have accrued and Plaintiff's reasonable attorney's fees in an amount to be determined by the Court," (Dkt. 20-1), assuming the parties were unable to reach an agreement on the fees amount. Because the parties were, indeed, unable to resolve this final aspect of the case, we do so here by ruling on the attorney's fees request filed by Plaintiff's counsel and opposed by Defendants' counsel.

---

[1] The Complaint also included two state law claims, one for conversion (IND. CODE § 34-24-3-1) and the other for a violation of the Indiana Deceptive Consumer Sales Act (IND. CODE § 24-5-0.5 *et seq*). These have been dismissed as part of the settlement.

1

The FDCPA makes mandatory an award of attorney's fees in favor of the prevailing party. Lemieux v. Guy, No. 1-06-cv-0941, 2006 WL 3626555, at *1 (S.D. Ind. Nov. 20, 2006). Plaintiff's counsel, Mr. Frasher, initially sought fees in the amount of $6,478.50 along with an additional payment of $363.02 as reimbursement of his costs and litigation expenses on behalf of Plaintiff. In a supplemental submission, Mr. Frasher upped his fees request (for additional services provided as of July 15, 2013) to a total of $11,248.52. The additional amount requested is to cover time he expended in prosecuting his fees request. This attorney fees request reflects a total of 36.9 hours of time multiplied by an hourly rate of $295, using the familiar lodestar method. (Plaintiff's counsel's original fees petition was based on 21.7 hours; additional claims were made for paralegal time (1.4 hours @ $55.00 per hour). The specific number of additional hours spent by Mr. Frasher in prosecuting his attorney fees claims has not been separated out from his overall request; we have been provided only his bottom line request.)

Defendants claim to be reeling from what they characterize as Mr. Frasher's clearly "excessive" fees request. Citing Gastineau v. Wright, 592 F.3d 747 (7th Cir. 2010) -- a case Defendants are no doubt well familiar with, since they were defendants there as well -- Defendants stress that applying the "lodestar method" presumes a <u>reasonable</u> hourly rate and a <u>reasonable</u> number of hours expended in the particular litigation. Neither element in this case is reasonable, they maintain. Our Seventh Circuit Court of Appeals has held that, if necessary, the district court is empowered to adjust the lodestar calculation to reflect various factors "including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. . . . The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." Id. at 748 (internal citations and

quotation marks omitted.) Defendants urge us to make a series of necessary adjustments to the lodestar application to reflect a more reasonable award.

We address below *seriatum* Defendant's specific objections to Mr. Frasher's fees request, beginning with the **hourly rate** claimed by Mr. Frasher as reasonable and appropriate compensation for his services followed by the reasonableness of his **time investments**.

**I.      Reasonableness of Hourly Rate**

Mr. Frasher seeks payment based on what he claims is his "normal hourly rate (of) $295 per hour for consumer law cases." (Pl.'s Reply at1). He buttresses his claim as to the reasonableness of this amount by citing to the United States Consumer Law Attorney Fee Survey Report (Exh. E to Pl.'s Motion [Dkt. 23]), a copy of which he appended to his submission as support for this rate. A review of this proprietary newsletter ("Fee Survey") leaves us in doubt as to its usefulness here or its overall reliability. It purports to capture and distill results from an on-line survey conducted sometime during 2010 (two years prior to the filing of the case before us) from among active members of a group from across the United States of apparently like-minded, similarly engaged litigators, namely, the National Association of Consumer Advocates. An in-depth study is not needed to identify some fairly obvious facial weaknesses in the data recounted there. For example, the report reflects the responses from a noticeably small sample size of members. In addition, the uniformity of their interests (and no doubt biases) is also apparent. We could identify no controls or differentiations in the sampling or the data based on specific geographical legal markets; for example, the chart in the report that presumably validates Mr. Frasher's fees amount reflects an hourly rate of $263 for attorneys practicing consumer law in the "Midwest Region" with 5 years' experience. For lawyers practicing 10 years (the next level up on the chart) the hourly rate is $318. A designation of "Midwest

Region" obviously implicates a highly diverse territory, particularly in terms of the economics of practicing law.  Chicago ordinarily is not viewed as a comparable marketplace for legal services to Indianapolis or Louisville, Kentucky or Columbus, Ohio, or Detroit, Michigan -- all solidly within the usual definitions of "Midwest."  Beyond these grouping errors, it is obvious that in responding to such a survey as produced here to substantiate a reasonable attorney's fee in consumer litigation,  such a group of lawyers is incented by their common interest to report the highest hourly billable rates within their diverse region.

Since Mr. Frasher did not set an hourly fee for his services at the outset of his representation of Plaintiff, having instead chosen to litigate this case on a contingency basis, we have no verification of what he represents as his "usual hourly rate" beyond the Fee Survey.  He has not documented his receipt of that level of hourly fee in any of his other cases.  In the absence of any objective verification, it is tempting to conclude that his $295 hourly rate is based only on the Fee Survey, despite Mr. Frasher's characterization of that amount as his "customary rate."  The Court in <u>Kaylor-Trent v. John C. Bonewicz, P.C.</u>, 916 F. Supp. 2d 878, 885 (C.D. Ill. 2013), refused to apply or otherwise credit such national fee surveys and tables of hourly rates for attorneys and paralegals in foreign jurisdictions, finding them inherently unreliable and suspect.  Given our own similar reservations about the reliability of the data and methodology of this particular report, which deficiencies are clear from even a cursory examination and not overcome or offset by any independent authentication, we, too, elect to disregard the information set out in Exhibit E as the basis for a finding as to a reasonable hourly rate here.

The customary and judicially preferred standard by which the reasonableness of hourly rates is measured ordinarily comes from sworn statements or testimony or other documentation attesting to the experience and opinions of other lawyers who regularly practice in a particular

4

geographical area and who provide similar or comparable legal services in that marketplace as the lawyer seeking the award of fees (i.e., Indianapolis, Indiana). A more experienced practitioner in federal court would likely know this. No such evidence has been submitted here by Mr. Frasher. "An attorney's 'market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999) (quoting *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995)). Plaintiff bears the burden of producing satisfactory evidence that the hourly rate he seeks is reasonable and in line with those prevailing in the community. Pickett v. Sheridan Health Care Ctr, 664 F. 3d 632, 640 (7th Cir. 2011) (citation omitted). Such information, had it been proffered in this case, would have been relevant and reliable and clearly more persuasive. Without it, our analysis is necessarily more circuitous.

Thus, we observe that Mr. Frasher is a young lawyer, having been admitted to the Indiana bar as recently as 2007 immediately following his graduation from the University of Dayton Law School. During his first six years of practicing law, he says he "has focused on consumer law," handling cases in federal court that arise under a variety of statutes, including the "FDCPA, RESPA, EFTA, FCRA and the ADA." Though he has had only one case so far that has gone to trial, he estimates the number of his cases currently pending in federal court to be more than thirty. On this basis, Mr. Frasher describes himself as an "experienced consumer lawyer."

Defendants take issue with Mr. Frasher's description of himself as an experienced consumer lawyer primarily due to his limited years of practice, but also based on the detailed review Defendants conducted of Mr. Frasher's case filings based on the PACER docketing system maintained by our Clerk of Court. Defendants note that, according to their research of the PACER data, Mr. Frasher's first case filed in our court commenced in 2009, and was concluded

shortly thereafter by a dismissal. Many others of his cases have also been dismissed shortly after they were filed for reasons not apparent on the docket. In certain instances, Mr. Frasher's role in a case was minimal, involving him only as co-counsel or local counsel. His most recent case (other than the one before us here) still pends, but remains in its earliest stages.

Defendants call our attention to several recent FDCPA decisions handed down by other judges in our district (Gastineau, supra, and Lemieux, supra) where substantial reductions in the allowable hourly rate payable to Plaintiff's counsel were imposed. In Gastineau, for example, Defendants note that the district court reduced the hourly rate from $250 to $150 based on counsel's lack of experience (the court determined that, despite having practiced law for thirteen years, this was his first FDCPA case); the number of hours reimbursed was also reduced in Gastineau. In Lemieux, a 2006 FDCPA decision by Judge Hamilton, formerly a judge of our court, the overall fee request submitted by highly experienced FDCPA counsel was nonetheless reduced from $8,000 to $2,000 primarily due to various excesses and inefficiencies which the Court identified in counsels' time keeping. Another judge of our court approved a $250 per hour fee in an FDCPA case, Young v. Accounts Recovery Bureau, Inc., No. 1-11-cv-255, 2012 WL 3764014 (Aug. 8, 2012), but held that fee to be justified given that attorney's fifteen years of experience in litigating similar cases; in addition, the judge observed, the lawyer's firm charged a set rate of $250/hour for his services no matter the kind of case. Those justifications for larger hourly rates do not apply to Mr. Frasher or to the case before us. Recently, in the Northern District of Indiana Judge Springman awarded an hourly rate of $285 in a consumer law case brought by a Ft.Wayne attorney who had twelve years of experience; in contrast, a lawyer in that same case with only two years' experience was awarded a rate of only $175/hour. Bratton v. Thomas Law Firm, PC, 943 F. Supp. 2d 897 (N.D. Ind. 2013).

Lacking any objective information as to Mr. Frasher's "usual billing rates" in similar non-contingency cases, and lacking any comparative evidence of fees charged by attorneys with comparable levels of experience in consumer law cases litigated in this district and/or the Indianapolis market, we cannot justify a $295/hour rate. His experience so far is only as a pleader, not a litigator. Accordingly, we hold that a reasonable fee is $195/hour, based on Mr. Frasher's relative lack of experience and expertise in handling such cases as well as the straightforward, uncomplicated nature of the claims in this matter as well as the modest amount of damages awarded Plaintiff as the prevailing party. This reduced rate more closely approximates the fees approved in similar cases in this district and in other courts within our circuit. As was true in Lemieux, we view this case as an open and shut matter, posing no difficult legal issues and yielding easily and quickly to a resolution by an agreed judgment. Thus, the expenditures of time and effort required of counsel were quite modest, the stakes of the case were also modest and the outcome never seriously in doubt.

Defendants have further objected specifically to the supplemental request for fees filed by Mr. Frasher [Dkt. 26] by which he has sought additional sums to cover his post-petition efforts in prosecuting his petition for fees. We agree with Defendants that the amount of this supplemental request is also excessive, speculating that if Mr. Frasher had been more measured and reasonable in his initial requests, and provided reliable, verifiable comparators, Defendants might not have mounted a significant challenge to what they viewed as his overreach. Thus, we shall reduce by half the requested amount of time expended by Mr. Frasher as reflected in his supplemental reimbursement submission.[2]

## II.     Reasonableness of Time Expenditures

---

[2] Plaintiff's Motion to Strike [Dkt. 28] is **DENIED**.

We turn next to the issue of Mr. Frasher's time expenditures. Mr. Frasher seeks reimbursement for a total of 36.9 hours he expended on this case. We must determine whether this amount of time spent on this case is "excessive, redundant or otherwise unnecessary," as Defendants allege, and, if so, to what extent. Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Our analysis essentially tracks the objections interposed by Defendants.

Defendants challenge what they characterize as several unnecessary research tasks, i.e., the "bona fide error defense" under the FDCPA (0.3 hours), bankruptcy jurisdiction issues (0.3 hours), class action procedures under Rule 23, Fed.R.Civ.P. (0.2 hours), various state law claims such as the Indiana Deceptive Consumer Sales Act claim (1.5 hours), and conversion (2.0 hours). Each of these claims was either futile or superfluous, Defendants maintain, and reflects the inefficient casting about of a lawyer who is inexperienced in framing and pursuing FDCPA actions. Defendants further note that the claims for punitive damages under the FDCPA and for declaratory relief under the FDCPA were unavailable to Plaintiff, so reductions for the time spent researching and drafting those claims should also be deducted. The time spent by Mr. Frasher relating to vacating a state court judgment entered prior to the date plaintiff commenced her bankruptcy proceeding was clearly irrelevant to this case, say Defendants, and thus should also be deducted. (No time amount was specified for this task by Defendants.)

Other deductions sought by Defendants include:
- One hour spent drafting a two-page demand letter;
- One hour spent drafting discovery requests;
- 0.8 hours spent drafting the case management plan; and
- Approximately 2 hours spent on administrative and clerical tasks.

Beyond these specific disallowances, Defendants assert that an overall cap of 15 hours would be appropriate and should be imposed on Mr. Frasher's time expenditures.

In response, Mr. Frasher offers various explanations for his time expenditures. In general, he maintains that his research reflects a level of commendable care and caution on his part in dealing with and anticipating all possible aspects of litigation such as this (i.e., the bona fide error defense, the bankruptcy option, state law theories of relief and their defenses, and the potential for a Class Action). Because we have reduced Mr. Frasher's hourly rate to take into account his lack of experience in handling this kind of litigation, it would be unfair to penalize him twice for the kind of inefficiencies that result from his lack of experience. In any event, we cannot quarrel with his having spent one hour drafting the demand letter or another hour drafting discovery requests in advance of receiving Defendants' Rule 68 Offer of Judgment. However, the administrative time counsel spent on secretarial or clerical tasks is not ordinarily appropriate as an attorney's fee (Spegon, 175 F.3d at 553), so we will deduct the two hours he has claimed for that purpose. Defendants have not objected to the $363.02 as costs and litigation expenses, so that amount will be included in our award.

**III.  Summary**

For the reasons previously explicated, we award fees to Plaintiff's counsel in the following amounts:

- TOTAL HOURS OF ATTORNEY SERVICE ALLOWED:  27.4 Hours (A reduction from the total 36.9 hours sought by Mr. Frasher, based on a 50% reduction in the 15 hours claimed by him for preparing/submitting the supplemental declaration, and a disallowance of the 2 hours claimed for administrative/clerical time)

- TOTAL FEES: $5,343 (computed on the basis of 27.4 hours multiplied by $195 per hour)

- <u>COSTS</u>:  $363.02

- <u>TOTAL AWARD PAYABLE TO PLAINTIFF'S COUNSEL BY DEFENDANTS</u>:

   $5,706.02 ($5,343 + $363.02)


IT IS SO ORDERED:

Date:   03/25/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

Ryan R. Frasher
RYAN FRASHER P.C.
rfrasher@frasherlaw.com